UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON


ROBERT WOODRUFF,

      Plaintiff,


v.                                Civil Action No. 2:13-24001


MICHAEL THORNSBURY, individually and
in his official capacity, and
JARROD FLETCHER, individually and
in his official capacity, and
STEVEN D. CANTERBURY, in his official
capacity as Administrator of the
West Virginia Supreme Court of Appeals, and
TROOPER BRANDON MOORE, individually and
in his official capacity, and
COLONEL JAY SMITHERS, in his official capacity
as Commander of the West Virginia State Police,
JEFF CLINE and
POLICE OFFICER NATHAN GLANDEN,
individually and in his official capacity, and
COMMISSIONERS OF THE MINGO COUNTY COMMISSION,
in their official capacity, and MICHAEL SPARKS,
in his official capacity,

      Defendants.


## MEMORANDUM OPINION AND ORDER


      Pending are separate motions to dismiss filed by

defendant Colonel Jay Smithers on October 14, 2013, by defendant

Administrator Steven D. Canterbury on October 30, 2013, by

defendant Officer Nathan Glanden on February 10, 2014, by

defendant Trooper Brandon Moore on February 12, 2014, by defendant

Michael Thornsbury on February 14, 2014, and by defendant Michael

Sparks, respectively, on April 7 and April 9, 2014 (original and

amended versions, hereinafter referred to as Mr. Sparks' "motion

to dismiss").[1]

Also pending are plaintiff Robert Woodruff's motion to

file the first amended complaint, filed February 14, 2014, and Mr.

Woodruff's motion to dismiss defendant Jeff Cline, filed February

21, 2014.  The motion to amend was presented following the

unauthorized filing of the first amended complaint on January 31,

2014.  That unauthorized filing is the sole basis for Mr.

Thornsbury's motion to dismiss.  Inasmuch as leave to amend should

_____

[1] Colonel Smithers and Administrator Canterbury moved to
dismiss the initial pleading prior to the filing of the first
amended complaint.  They have not so moved following presentment
of the first amended complaint.  The court treats these two
earlier filed motions to dismiss as lodged against the first
amended complaint.
    Trooper Moore and Officer Glanden also moved to dismiss prior
to presentment of the first amended complaint but moved anew
against the first amended complaint, as noted, respectively, on
February 10 and 12, 2014.  The court ORDERS that the two earlier
filed motions to dismiss by Trooper Moore and Officer Glanden,
found respectively at docket entries 17 and 35 be, and hereby are,
denied as moot.
    The City of Gilbert, formerly named as a defendant under the
initial pleading, has since been voluntarily dismissed.
Accordingly, the court ORDERS that the City of Gilbert's
previously filed motion to dismiss, found at docket entry 38, be,
and hereby is, denied as moot.  Further, inasmuch as the court
previously denied a motion to dismiss filed by Mr. Thornsbury
respecting a service of process issue, it is ORDERED that Mr.
Woodruff's related "MOTION TO FIND DEFENDANT MICHAEL THORNSBURY'S
MOTION TO DISMISS MOOT UNDER PRINCIPLES OF RES JUDICATA AND
COLLATERAL ESTOPPEL," found at docket entry 40 be, and hereby is,
denied as moot.

be freely granted, and the proposed amendment is within the applicable deadline specified in the scheduling order, it is ORDERED that the motion to amend be, and hereby is, granted.  It is further ORDERED that the first amended complaint be, and hereby is, filed nunc pro tunc on January 31, 2014.  It is additionally ORDERED that Mr. Thornsbury's motion to dismiss be, and hereby is, denied as moot.

Respecting Mr. Woodruff's motion to voluntarily dismiss Mr. Cline, it is asserted that Mr. Cline has no assets to satisfy a judgment.  Mr. Woodruff thus seeks to voluntarily dismiss Mr. Cline.  Colonel Smithers, the Mingo County Commission, and Jarrod Fletcher oppose dismissal, asserting, inter alia, that Mr. Cline is an indispensable party, that his absence would prejudice them, and that the proper apportionment of liability depends upon Mr. Cline remaining a party defendant.  Mr. Woodruff has not replied. Inasmuch as it appears at this juncture that the proper apportionment of liability and the award of complete relief among the parties depends upon Mr. Cline remaining in the action as a party defendant, it is ORDERED that Mr. Woodruff's motion to dismiss Mr. Cline be, and hereby is, denied without prejudice.

I.

**A.   The Defendants**


On September 30, 2013, plaintiff Robert Woodruff instituted this action.  He is a resident of Mingo County, West Virginia.  Defendant Michael Thornsbury was, at all relevant times, serving as a judge on the Circuit Court of Mingo County. Mr. Woodruff alleges that the unlawful actions engaged in by Mr. Thornsbury occurred while he was acting in his official capacity.

Colonel Smithers commands the West Virginia State Police.  Administrator Canterbury is the operations director of the Supreme Court of Appeals of West Virginia.

Defendant Jarrod Fletcher was, at all times relevant, the foreperson of the Mingo County grand jury.  Mr. Woodruff alleges that all actions complained of by Mr. Fletcher occurred while he was acting in his official capacity on behalf of the Mingo County Commission.

Trooper Moore is a member of the West Virginia State Police.  Officer Glanden is, or formerly was, a member of the City of Gilbert Police Department.  Defendant Jeff Cline is a close friend and confident of Mr. Thornsbury.  The Mingo County

Commission is the municipal seat of government for Mingo County. Mr. Sparks is the former Prosecuting Attorney of Mingo County.

B.   General Allegations of the First Amended Complaint

Mr. Woodruff is married to Kimberly Woodruff.  He was employed at H. Coal Co., a Mingo County coal mining facility. From approximately January 2008 through spring 2009, Ms. Woodruff was Mr. Thornsbury's administrative assistant.  She endured his various forms of sexual harassment during this time, refusing his proposed liaisons.  Mr. Thornsbury told Ms. Woodruff that, if her husband were ever arrested, he would be forced to terminate her employment.  She continued to rebuff his advances.

From approximately 2007 through early 2010, then-Judge Thornsbury cultivated a relationship with Trooper Moore with the design of securing influence over him in the performance of Trooper Moore's official duties.  Mr. Thornsbury is also alleged to have gained influence and control over Mr. Fletcher, who was Mingo County's Director of Homeland Security and Emergency Management when he was serving as foreman of the grand jury.  Mr. Fletcher is a close friend of Mr. Thornsbury and, in 2008 and 2009, the two became business partners in multiple ventures.  That relationship was not widely known until mid-2009.

**C.    The Alleged Conspiratorial Activities Aimed at Mr. Woodruff**

Ms. Woodruff's refusal to engage in a sexual liaison with Mr. Thornsbury caused him, in the second half of 2008, to devise a scheme to have Mr. Woodruff incarcerated.  Mr. Thornsbury instructed Mr. Fletcher to relay information to Trooper Moore and other, unnamed members of the West Virginia State Police that Mr. Woodruff had concealed cocaine under his pickup truck.  Mr. Fletcher was selected for this task based upon his influence as Director of Mingo County Homeland Security and Emergency Management.  Both Mr. Fletcher and Trooper Moore were aware of the fact that Mr. Thornsbury was obsessed with Ms. Woodruff at the time.

At a later unspecified date, Mr. Thornsbury summoned Mr. Cline to his chambers.  Mr. Cline was instructed to attach a metal box filled with cocaine under Mr. Woodruff's vehicle.  Mr. Thornsbury explained that, with Mr. Woodruff out of the way, Ms. Woodruff would be forced to have a romantic relationship with him out of financial necessity.  Mr. Cline agreed to plant the drugs as directed but never followed through.

From 2006 through 2008, Mr. Woodruff salvaged scrap mine-roof drill bits from his employer, H. Coal Co.  He would then

transport them to another facility for refurbishing.  H. Coal permitted him to do so.  In approximately the second half of 2008, however, Mr. Thornsbury told Trooper Moore that Mr. Woodruff was stealing the bits.  Mr. Thornsbury instructed Trooper Moore to file charges to that effect but to conceal Mr. Thornsbury's involvement.

Upon investigating the matter, Trooper Moore learned that Mr. Woodruff was authorized to take the bits.  When Trooper Moore informed Mr. Thornsbury, the latter nevertheless insisted that Mr. Woodruff be charged with grand larceny.  On December 2, 2008, Trooper Moore arrested Mr. Woodruff on three (3) felony counts arising out of Mr. Woodruff's authorized bit removal work. He was charged with grand larceny, receiving and transferring stolen goods, and obtaining money under false pretense.  Mr. Woodruff was on bond from December 2, 2008, to January 9, 2009. On that end date the charges were dismissed.

On January 14, 2009, Trooper Moore, at Mr. Thornsbury's direction, filed an additional criminal charge against Mr. Woodruff for the same fraudulent scheme.  The charge remained pending from January 14, 2009, until August 21, 2013.  On that end date, it was dismissed.

On January 20, 2009, Mr. Thornsbury appointed Mr. Fletcher as the foreperson of the Mingo County grand jury.  That

7

act is alleged to have contravened West Virginia Code section 52-1-8(d), which prohibits a state officeholder from serving on a state grand jury.  The appointment ostensibly permitted Mr. Thornsbury to control the grand jury.  That control allegedly resulted in the improper issuance of grand jury subpoenas <u>duces tecum</u> to oppress Mr. Woodruff and procure his indictment on felony charges.  Trooper Moore was called to testify against Mr. Woodruff on this matter in the absence of the prosecuting attorney.  The grand jury did not return an indictment.

On or about January 25, 2012, Mr. Woodruff was involved in an altercation at a convenience store in Gilbert.  A police report indicated that two other individuals started the conflict, with one pulling a firearm.  Three eye witnesses reported as much. Law enforcement review of a video recording of the altercation confirmed the accounts.  A month later, however, Mr. Thornsbury told Officer Glanden to obtain an arrest warrant for Mr. Woodruff on charges of assault and battery.  Officer Glanden was not involved in the investigation up to that point.  On February 23, 2012, Officer Glanden executed the warrant as instructed.

Between February 2012 and October 2012, during which time Mr. Woodruff was on bond, Mr. Thornsbury instructed Mr. Cline to visit the Mingo County Prosecuting Attorney.  Mr. Cline was directed to tell the prosecutor to offer a plea agreement to Mr.

Woodruff requiring a six-month term of incarceration on the assault and battery charge.  First time offenders on an offense of that sort are typically offered the penalties of a nominal fine and the payment of court costs.  The plea agreement offer was refused by Mr. Woodruff and his lawyer.  On October 31, 2012, just a few days before the scheduled trial, the case was dismissed. Mr. Woodruff was only recently made aware of the conspiratorial activities directed against him.  The conspiracy was concealed until uncovered by federal law enforcement agents on a date unknown.

On September 30, 2013, Mr. Woodruff instituted this action.  The January 31, 2014, first amended complaint alleges in Count One a claim pursuant to 42 U.S.C. § 1983 against Mr. Thornsbury, Mr. Fletcher, Officer Glanden, and Trooper Moore for deprivation of his due process rights, malicious prosecution and false imprisonment arising out of the criminal proceedings relating to the bits and the assault and battery.  The attempt to plant cocaine under Mr. Woodruff's truck is also mentioned.

Count Two asserts a conspiracy to pursue a malicious prosecution under state law arising out of the criminal proceedings relating to the bits and the plan to plant cocaine under Mr. Woodruff's truck.  The claim is pled pursuant to West Virginia Code section 55-7-9, which creates a civil claim for the

violation of any West Virginia statute.  The predicate statutory violation is said to be the criminal conspiracy to falsely impute criminal liability to Mr. Woodruff.

Count Three alleges a claim for gross negligence arising out of the entire factual predicate pled and summarized earlier. Mr. Woodruff asserts that Mr. Thornsbury was obliged to adhere to the Code of Judicial Conduct and was negligent in attempting to produce a sexual liaison with Ms. Woodruff.  He asserts that negligent act proximately caused the unlawful activities thereafter directed toward Mr. Woodruff.

Count Four alleges a gross negligence claim against Mr. Fletcher.  Mr. Fletcher is alleged to have negligently failed to recognize his statutory ineligibility to serve as a grand jury foreman in light of the Mingo County Commission appointed office that he held at the time.

Count Five alleges negligent infliction of emotional distress against all of the defendants without significant elaboration.  Similarly, Count Six asserts a claim for intentional infliction of emotional distress arising out of the events that led to Mr. Woodruff's incarceration and prosecution.  So, too, Count Seven pleads a false imprisonment claim resulting from Mr. Woodruff's incarceration on the trumped-up charges.

Count Eight accuses recently added party Michael Sparks of negligence.  Mr. Sparks is the former prosecutor of Mingo County.  The first amended complaint alleges that he knew of Mr. Thornsbury's intentions respecting Ms. Woodruff, and the influence the then-Judge exercised over Trooper Moore, but nevertheless negligently and recklessly pursued the charges relating to the bits.  Mr. Woodruff asserts that Mr. Sparks failed to diligently investigate the allegations against Mr. Woodruff and then, in December 2008, simply disqualified himself from the proceedings. He is alleged to have done so in order to distance himself from the false charges.  It is further alleged that Mr. Sparks (1) knew that Mr. Fletcher was improperly appointed to serve as the grand jury foreperson, (2) negligently allowed the grand jury to continue its investigation of Mr. Woodruff, and (3) knew of Mr. Fletcher's friendship and business association with Mr. Thornsbury.  Count Nine claims Mr. Sparks maliciously prosecuted Mr. Woodruff.  The supporting allegations are essentially along the same lines as those pled in Count Eight.

Mr. Woodruff seeks compensatory and punitive damages. Neither Colonel Smithers nor Administrator Canterbury is mentioned in the factual allegations of the first amended complaint.  As noted, Colonel Smithers, Administrator Canterbury, Trooper Moore, Officer Glanden, Mr. Thornsbury, and Mr. Sparks move to dismiss.

II.

A.   Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 545 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), <u>overruled on other grounds</u>, <u>Twombly</u>, 550 U.S. at 563); <u>see also</u> <u>Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 188 (4th Cir. 2007). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570); <u>see also</u> <u>Monroe v. City of Charlottesville</u>, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'" <u>Erickson</u>, 127 S. Ct. at 2200 (quoting <u>Twombly</u>, 127 S. Ct. at 1965); <u>see also</u> <u>South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co.</u>, 372 F.3d 245, 255 (4th Cir. 2004) (quoting <u>Franks v. Ross</u>, 313 F.3d 184, 192 (4th Cir. 2002)).  The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ." <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

**B.   Colonel Smithers and Administrator Canterbury**

Counts Five, Six, and Seven are alleged against all "Defendants" generally.  For example, the Count Five negligent infliction of emotional distress claim states as follows:

> 78.  All Defendants' actions were grossly negligent in that they failed to think through the logical consequences of their respective actions.
>
> 79. As a result of the Defendants' gross negligence, plaintiff Woodruff suffered extreme depression, anxiety, and thoughts of suicide.

(First Am. Compl. ¶¶ 78-79).  In seeking dismissal, Colonel Smithers notes (1) the absence of any well-pled factual allegations against him to support these three claims, (2) the only claims pled against him are in his official capacity and

hence barred by the Eleventh Amendment, and that (3) Mr. Woodruff cannot prevail on an individual capacity claim based upon his inability to demonstrate the elements for supervisory liability found in Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir 1994).

The grounds relied upon by Administrator Canterbury are similar.  He asserts that (1) the Eleventh Amendment bars the claims pled against him, (2) respondeat superior provides no basis for liability under Section 1983, (3) Mr. Thornsbury's actions were outside the scope of his employment, and (4) Administrator Canterbury was not his employer, and thus respondeat superior is unavailable.

Respecting the Eleventh Amendment immunity defense, Mr. Woodruff's response confirms that "Col[onel] Smithers has been sued in his official capacity as Commander of the West Virginia State Police . . . ."  (Resp. at 1).  The same is true respecting his response to Administrator Canterbury's motion.  (Resp. at 3 ("Mr. Canterbury has been sued in his official capacity as Administrator of the West Virginia Supreme Court of Appeals")).[2]

_____

[2] Mr. Woodruff also appears to assert that West Virginia has essentially waived Eleventh Amendment immunity by permitting claims against it up to the limits of its insurance coverage. That argument appears to be foreclosed by Westinghouse Elec. Corp. v. West Virginia Dept. of Highways, 845 F.2d 468, 471 (4th Cir. 1988).

First, it is well-settled that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989).  For this reason, the Section 1983 claim does not lie against either Colonel Smithers or Administrator Canterbury.

Second, the Eleventh Amendment states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  The immunity protects unwilling states from damage suits in federal court, along with their agents and instrumentalities.  <u>See Regents of the Univ. of Cal. v. Doe</u>, 519 U.S. 425, 429 (1997); <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. at 70–71; <u>Edelman v. Jordan</u>, 415 U.S. 651, 662–63 (1974); <u>Bland v. Roberts</u>, 730 F.3d 368, 389-90 (4th Cir. 2013).

The official capacity suit against Colonel Smithers and Administrator Canterbury is, "'in effect, . . . against the governmental entit[ies] employing'" them.  <u>Nivens v. Gilchrist</u>, 444 F.3d 237, 249 (4th Cir. 2006) (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).  It is thus apparent that the Eleventh Amendment bars the official capacity claims alleged against them. It is, accordingly, ORDERED that Colonel Smithers' and

Administrator Canterbury's separate motions to dismiss be, and they hereby are, granted.


C.   Trooper Moore


        Trooper Moore offers many grounds for dismissal.  First, he asserts Mr. Woodruff's claims are time barred.  Second, he asserts he is immune for any claims arising out of his grand jury testimony.  Third, he contends that the Count Three malicious prosecution claim and the Count Six tort of outrage claim fail the **Twombly** plausibility test.  Fourth, he challenges the applicability of West Virginia Code section 55-7-9.  Fifth, he asserts that there is no basis for an official capacity claim against him.  Sixth, he asserts that the Count Five claim for negligent infliction of emotional distress is legally deficient.[3]

---

[3]   In his response, Mr. Woodruff disavows any intention to name Trooper Moore in the Count Two claim for conspiracy to pursue a malicious prosecution.  He also notes that he has not alleged an official capacity claim against Trooper Moore.  The court thus need not reach Trooper Moore's underlying arguments on those two points.  Additionally, the applicability of West Virginia Code section 55-7-9 is governed by a multifactor test.  The parties have not discussed how those factors bear on the circumstances of this case or the alleged criminal activities at issue.  The matter awaits further factual and legal development.

### 1.   The Limitations Defense


Trooper Moore contends that Mr. Woodruff's claims are time barred.  All of the claims are subject to either a one- or two-year limitations period.  As noted, however, Mr. Woodruff specifically alleges that he was, until 2013, unaware of the conspiracy outlined in the complaint.  He further alleges that the defendants deliberately concealed the conspiracy from him.  The court construes this allegation to give rise to an equitable tolling argument.

The same tolling rules apply to both the section 1983 and state tort claims.  See Wallace v. Kato, 549 U.S. 384, 394 (2007) ("We have generally referred to state law for tolling rules, just as we have for the length of statutes of limitations."); Wade v. Danek Medical, Inc., 182 F.3d 281, 289 (4th Cir. 1999) (stating "in any case in which a state statute of limitations applies -- whether because it is 'borrowed' in a federal question action or because it applies under Erie in a diversity action -- the state's accompanying rule regarding equitable tolling should also apply.").

In syllabus point 5 of Dunn v. Rockwell, 225 W. Va. 43, 689 S.E.2d 255 (2009), the Supreme Court of Appeals of West

Virginia set forth the rubric governing limitations defenses.  The analysis at step four is summarized below:

> A five-step analysis should be applied to determine whether a cause of action is time-barred. . . . [Respecting the fourth step], if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action.  <u>Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled</u>. . . . Only the first step is purely a question of law; <u>the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact</u>.

<u>Id.</u> (emphasis added).

The question posed at step four relating to fraudulent concealment is not susceptible of resolution at the Rule 12(b)(6) stage under the circumstances presented.  Trooper Moore is thus not entitled to dismissal at this point on limitations grounds.


## 2. Grand Jury Testimony Immunity


Trooper Moore contends that he is entitled to immunity for any claims arising out of his grand jury testimony.  The court notes that very recent, binding federal precedent imposes the immunity bar.  <u>See</u> <u>Rehberg v. Paulk</u>, 132 S. Ct. 1497, 1506 (2012) (stating "a grand jury witness has absolute immunity from any §

18

1983 claim based on the witness' testimony. In addition, . . . this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution."). State law does not appear to be to the contrary.  See Davis ex rel. Davis v. Wallace, 211 W. Va. 264, 267, 565 S.E.2d 386, 389 (2002) ("Historically, in West Virginia and in other jurisdictions, witnesses have been regarded as having an absolute immunity regarding their testimony given during a trial.").

Based upon the decisions in Paulk and Wallace, it is ORDERED that Trooper Moore's motion to dismiss be, and hereby is, granted insofar as he is not liable under federal or state law for any claims directly based upon his grand jury testimony.

3.  Count Five Negligent Infliction of Emotional Distress

Trooper Moore asserts that Mr. Woodruff has failed to plead facts that would give rise to a claim for negligent infliction of emotional distress.  Trooper Moore appears to assert that a viable claim depends upon Mr. Woodruff suffering a personal injury or witnessing someone closely related to him suffer the same type of injury or death.  The principal case relied upon by

19

Trooper Moore, <u>Heldreth v. Marrs</u>, 188 W. Va. 481, 425 S.E.2d 157 (1992), is no longer a complete statement of the law in this area.

The supreme court of appeals has observed that "'[a]n individual may recover for negligent infliction of emotional distress absent accompanying physical injury <u>upon a showing of facts sufficient to guarantee that the emotional damages claim is not spurious</u>." <u>Marlin v. Bill Rich Const., Inc.</u>, 198 W. Va. 635, 482 S.E.2d 620, 637 (1996) (citing <u>Ricottilli v. Summersville Memorial Hosp.</u>, 188 W. Va. 674, 425 S.E.2d 629 (1992)).  At the same time, the West Virginia court has noted that "cases will obviously be infrequent in which 'mental disturbance,' not so severe as to cause physical harm, will clearly be a serious wrong worthy of redress and sufficiently attested by the circumstances of the case." <u>Id.</u> (quoting <u>Ricottilli</u>, 425 S.E.2d at 635).

Mr. Woodruff pleads that he was targeted by a judicial and law enforcement conspiracy, on multiple occasions, designed to put him behind bars so that one of the principals could pursue a romantic liaison with Mr. Woodruff's spouse.  The conspiracy involved multiple unlawful directives to law enforcement, including Trooper Moore, the empanelment of a grand jury and issuance of its process, an indictment, the arrest of Mr. Woodruff and multiple other allegedly baseless efforts aimed to result in

20

his wrongful incarceration.  He has successfully pled a claim for negligent infliction of emotional distress.

D.   Officer Glanden

Officer Glanden also urges a number of grounds for dismissal.  Foremost is his asserted entitlement to qualified immunity, the analysis of which may dispose of both the federal and state claims alleged against him.

Officer Glanden asserts that he is alleged only to have obeyed Mr. Thornsbury's directive to obtain an arrest warrant against Mr. Woodruff.  He notes that state circuit court judges are vested with the authority to issue warrants and that Mr. Thornsbury was essentially exercising that authority.  He further notes as follows:

> Plaintiff has not articulated any "facts" that establish Defendant Glanden "conspired" with Defendant Thornsbury in a "scheme" to unjustly arrest and cause constitutional injury to Plaintiff. Plaintiff has asserted no "facts" against Defendant Glanden demonstrating that he maliciously and in bad faith obtained an arrest warrant for Plaintiff and/or that he maliciously and in bad faith arrested Plaintiff.
>
> The factual averments articulated by Plaintiff demonstrate nothing other than Defendant Glanden, a Police Officer, acted in accordance with the order of a Circuit Court Judge to arrest an individual for alleged criminal act(s).

(Memo. in Supp. at 12).

21

Qualified immunity "shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006) (internal quotation marks omitted). The defense does not protect government officials when they are "plainly incompetent or . . . knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). It is instead "where the law is unsettled or murky, [that] qualified immunity affords protection to [a government official] who takes an action that is not clearly forbidden —- even if the action is later deemed wrongful." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001) (internal quotation marks omitted). In sum, "Government officials are entitled to the defense of qualified immunity unless a § 1983 claim satisfies the following two-prong test: "'1) the allegations underlying the claim, if true, substantiate a violation of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known.'" Occupy Columbia v. Haley, 738 F.3d 107, 118 (4th Cir. 2013) (Ridpath, 447 F.3d at 306 (internal quotation marks omitted)).

The material allegations against Officer Glanden are as follows:

> 54. On or about January 25, 2012, plaintiff Woodruff was involved in an altercation at a convenience store in or about Gilbert, Mingo County, West Virginia. A police report authored by a Gilbert police officer indicated that two men started an altercation with plaintiff Woodruff, and that one of the men pulled a gun on plaintiff Woodruff.
>
> 55. Three eye witnesses to the altercation reported to the police that the two men were the aggressors, and one witness testified that he saw one of the men pull a gun on plaintiff Woodruff. Police reviewed a video recording of the altercation from the store's security system and confirmed that the two men were the aggressors.
>
> 56. Upon information and belief, and subject to confirmation during discovery, approximately a month after the altercation described in paragraph 55, defendant Thornsbury instructed defendant Officer Nathan Glanden of the Town of Gilbert Police Department, who was not part of the original investigation into the altercation described in paragraph 55, to obtain an arrest warrant for plaintiff Woodruff on charges of assault and battery. Defendant Glanden obtained the arrest warrant on February 23, 2012, and arrested plaintiff Woodruff.

(First Am. Compl. ¶ 54-56).  In his response to the motion to dismiss, Mr. Woodruff offers the following factual assertions and argument:

> What is alleged is that Officer Glanden participated in the conspiracy, and in factual support of that allegation, Plaintiff pled that the officers who had reviewed the security tapes concluded that it was the two other individuals, and not Plaintiff, who were the aggressors. From the fact that the arrest was utterly frivolous, this Honorable Court may reasonably infer that further discovery may well reveal that Officer Glanden was part of a conspiracy falsely to arrest and prosecute the Plaintiff in furtherance of Defendant Thornsbury's scheme or plan sexually to harass the

Plaintiff's wife in a number of different ways.

Most convincingly, inherent in the whole process of obtaining a warrant is the act of swearing out a complaint, which complaint must allege "facts" upon which the magistrate can find probable cause. If, indeed, the investigating officers concluded that the Plaintiff was entirely innocent, where did Officer Glanden get the information for his warrant? The obvious inference is that Officer Glanden knowingly falsified the sworn affidavit in support of warrant. Officer Glanden had no personal knowledge from which he could compose an affidavit, and the investigating officers would never have sworn to facts contrary to what their investigation had revealed. In any event, that is a subject for further discovery, but as of now a sufficient case has been made against Officer Glanden to withstand a motion to dismiss. Willful, intentional, knowing malicious actions on the part of a police officer have no immunity!

(Resp. at 5).

Mr. Woodruff has not pointed the court to that portion of the first amended complaint where Officer Glanden is specifically accused of participating in the alleged conspiracy. It is true that Officer Glanden's investigating colleagues found little support to charge Mr. Woodruff. Mr. Woodruff, however, does not connect the knowledge of those officers to the information possessed by Officer Glanden when he pursued the arrest warrant at the direction of then-Judge Thornsbury. The operative pleading actually contends otherwise. (See First Am. Compl. ¶ 56 (noting Officer Glanden "was not part of the original investigation into the altercation described in paragraph 55")).

24

Mr. Woodruff has alleged nothing more than Officer Glanden's innocent compliance with a judicial directive to obtain an arrest warrant.  That bare allegation does not give rise to a state, much less a federal constitutional, claim.

The court, accordingly, ORDERS that Officer Glanden's motion to dismiss be, and hereby is, granted conditionally.  Mr. Woodruff may, no later than May 23, 2014, attempt to amend the operative pleading to allege further facts that would state a plausible state or federal claim against Officer Glanden.  In the absence of such an amendment, the motion to dismiss will be formally granted.

E.   Mr. Sparks

Mr. Sparks urges that he is entitled to absolute immunity for the claims alleged by Mr. Woodruff.  In his response, Mr. Woodruff puts a fine point on the nature of those claims:

> [T]he gravamen of Plaintiff's claim against Defendant Sparks arises from his administrative activities, namely failing to do his ministerial duty to prevent the grand jury process from being polluted by being controlled by a foreperson unauthorized by law to serve as a foreperson, and for failing to do his administrative duty and require all grand jury subpoenas to be issued through the prosecuting attorney's office . . . .

(Resp. at 5).

Based upon the time line found in the operative pleading, the court need not at this time analyze the immunity doctrine relied upon by Mr. Sparks.  On December 18, 2008, Mr. Sparks disqualified himself from the matters relating to Mr. Woodruff.  It was not until January 20, 2009, that Mr. Thornsbury appointed Mr. Fletcher as the grand jury foreman, after which the challenged subpoenas issued.  Inasmuch as Mr. Sparks had disqualified himself from the proceedings relating to Mr. Woodruff prior to the material events identified in the response to the motion to dismiss, it is presently unclear whether there is a basis for the claims alleged and the extent to which the doctrine of absolute immunity might apply.

The court, accordingly, ORDERS that Mr. Spark's motion to dismiss be, and hereby is, granted conditionally.  Mr. Woodruff may, no later than May 23, 2014, attempt to amend the operative pleading to allege further facts that would state a plausible state or federal claim against Mr. Sparks.  In the absence of such an amendment, the motion to dismiss will be formally granted.

III.


        Based upon the foregoing discussion, it is ORDERED as
follows:

1.    That the motion to amend be, and hereby is, granted, and
      that the first amended complaint be, and hereby is, filed
      nunc pro tunc on January 31, 2014;

2.    That Mr. Thornsbury's motion to dismiss be, and hereby is,
      denied as moot;

3.    That Colonel Smithers' and Administrator Canterbury's
      motions to dismiss be, and hereby are, granted;

4.    That Trooper Moore's motion to dismiss be, and hereby is,
      denied except to the extent that he is not liable under
      federal or state law for any claims directly based upon
      his grand jury testimony;

5.    That Officer Glanden's and Mr. Sparks' motions to dismiss
      be, and hereby are, granted conditionally; and

6.    That Mr. Woodruff be, and hereby is, permitted no later
      than May 23, 2014, to attempt to amend the operative pleading
      to allege further facts that would give rise to plausible

state or federal claims against Officer Glanden and Mr.
Sparks.

The Clerk is directed to transmit copies of this written
opinion and order to all counsel of record and any unrepresented
parties.

ENTER:  May 8, 2014

John T. Copenhaver, Jr.
United States District Judge